HODGSON RUSS LLP
Attorneys for James H. Lee
152 West 57th Street, 35th Floor
New York, New York 10019
        and
One M&T Plaza, Suite 2000
Buffalo, New York  14203
NYC Telephone: (212) 751-4300
NYC Facsimile: (212) 751-0928
Buffalo Telephone (716) 856-4000 ex 1233
Buffalo Facsimile (716) 849-0349
Peter A. Muth (PM - 9103)


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                                                    Chapter 11
                                                                                               Case No.: 05-12422 (ESS)

S.K. NEW YORK, LLC,

                                                                                  *Debtor.*
------------------------------------------------------------------X
                                                                                    Adversary Proceeding

JAMES H. LEE

                                                                                    AP #
                  -against-
S.K. NEW YORK, LLC,
ZENITH T. TAYLOR, ESQ., as court-appointed Referee,

                                                                         *Defendants.*
------------------------------------------------------------------X


## COMPLAINT


       The Plaintiff, James H. Lee ("Mr. Lee") in the above captioned adversary proceeding, by and through his undersigned attorneys, as and for his complaint, alleges as follows:

## PARTIES

1. Mr. Lee was a participant in a consortium of investors who submitted the winning bid at a foreclosure sale of 150-24 Northern Boulevard, Flushing, New York (the "Premises"), held on June 3, 2005.

2. S. K. New York, LLC (the "Debtor"), at the time of the events described herein, was the owner of the Premises.

3. Northern Boulevard Acquisition Corp. ("NBAC"), at the time of the events described herein, was successor mortgagee on a mortgage originally issued to GMAC Commercial Mortgage Corporation ("GMAC"), on loan to the Debtor, secured by the Premises. NBAC also succeeded to GMAC's Judgment of Foreclosure and Sale, obtained in GMAC's action to foreclose the mortgage.

4. Zenith T. Taylor, Esq. is the Referee (the "Referee") appointed in the aforesaid foreclosure action.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b).

6. Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This proceeding is governed by Bankruptcy Rule 7001 (2) and (9).

## FACTS

8. On July 2, 2003, Supreme Court Justice Janice A. Taylor granted a Final Judgment of Foreclosure and Sale (the "Judgment") in an action brought by GMAC to foreclose the Premises.

9. Upon information and belief, GMAC had earlier agreed to satisfy its mortgage on the Premises for $8.4 million. The attempts by the Debtor to raise those funds appears to have failed.

10. A foreclosure sale was initially held on February 25, 2005, at which time a winning bid of $9 million was submitted.

11. The Debtor had filed for Chapter 11 relief the prior day, and the sale was later vacated.

12. On or about April 5, 2005, NBAC took over GMAC's position in exchange for the sum of $9.776 million.

13. A second foreclosure sale was held on June 3, 2005.

14. Chong Min Mun, one of the principals of the Debtor, attended the June 3, 2005 sale in a continued attempt to purchase and retain the Premises.

15. Also attending the sale was a Mr. Hu Bai An.

16. Upon information and belief, Mr. An approached Mr. Mun representing that he knew some of the other parties attending the sale, including Mr. Lee. Mr. An offered to broker an arrangement between Mr. Mun (and his financial backers) and Mr. Lee, to combine their resources to purchase the Premises.

17. Mr. Mun and Mr. Lee were persuaded to join forces. Mr. Lee and Mr. Mun agreed with Mr. An to form a consortium to bid up to "the $16 million range".

18. Mr. An also introduced Mr. Mun and Mr. Lee to his associates Michael Chang and Jack Kameo, bringing them into the consortium.

19. It was agreed that Mr. Lee and Mr. Mun would provide the majority of the funds to purchase the property, while Mr. Chang would perform the actual bidding.

20. Mr. Lee and Mr. Mun provided Mr. Chang with their certified checks to enable the submission of joint bids.

21. Unbeknownst to Mr. Lee, the bidding did not stop until Mr. Chang submitted the high bid of $19.2 million, close to the amount owed on the Judgment.

22. At the conclusion of the auction, Mr. Change tendered a $2 million deposit to the Referee, comprised of $1.3 million from Mr. Lee, $500,000 from Mr. Mun, and $200,000 from the other three parties.

23. Although Mr. Chang was required to tender $1 million of Mr. Mun's check, and $800,000.00 of Mr. Lee's checks, Mr. Chang tendered only $500,000.00 of Mr. Mun's funds, and $1.3 million of Mr. Lee's funds.

24. Mr. Mun has claimed that shortly after the sale, Mr. Kameo admitted to Mr. Mun's son, David Mun, that Messrs. Kameo and An had a stake in the outcome of the foreclosure sale, through the promise of a percentage of the final bid.

25. The admission was purportedly made to David Mun, that Messrs. Kameo and An were previously affiliated with the owners of NBAC in a company called the Baroda Company, Inc. ("Baroda").

26. Upon information and belief, Baroda had, in fact, been the real purchaser of the GMAC note and mortgage, and had created NBAC solely for purpose of holding the note and mortgage.

27. According to Mr. Mun, as the story was allegedly related to David Mun, NBAC had bought out Mr. Kameo's and Mr. An's interests, with a promise to share a percentage of any sales proceeds if the property was eventually sold at the foreclosure sale in excess of a certain sum.

28. Mr. Mun advised Mr. Lee of none of these facts, but merely indicated that he was convinced that they had bid too much for the Premises, and that he was going to attempt to have the Referee reduce the price.

29. Based upon a claim that Mssrs. Chang, An, and Kameo had used Mr. Mun's and Mr. Lee's money to create a bidding entity to push up the sales price for their own benefit, Mr. Mun obtained counsel to file an Adversary Proceeding to attempt to cancel the sale or, alternatively, delay the closing, in order to determine if there had been actual collusion or sufficient impropriety to justify a cancellation of the sale.

30. Mr. Lee had not authorized an action to be filed on his behalf and later filed a motion seeking to withdraw as a plaintiff from the Adversary Proceeding.

31. An agreement to delay the closing until August 5, 2005 was worked out by counsel for NBAC and Mr. Mun and Mr. Lee. On June 30, 2005, the Court entered an Order by which Mr. Mun and Mr. Lee were to provide an additional sum of $1 million to NBAC on or before July 11, 2005 as consideration for the temporary adjournment of the closing.

32. The Order provided that if the money was not tendered by July 11, 2005, the Referee was to re-notice and reschedule the sale.

33. On July 11, 2005, Mr. Lee tendered his certified check for $500,000.00 to NBAC's counsel.

34. Mr. Lee had been assured that Mr. Mun would also deliver his funds on or before July 11, 2005.

35. Upon information and belief, on the afternoon of July 11, 2005, Mr. Mun delivered a certified check for $300,000.00 to counsel for NBAC, augmented by a photocopy of

a check for $200,000.00, which he claimed was being sent out and would be in counsel's hands the following day.

36. NBAC refused to accept the tender.

37. Another foreclosure sale was rescheduled for August 19, 2005, 11 weeks after the earlier sale. At that time the Referee again put the Premises up for sale.

38. This time, the sale generated a high bid of $20.1 million, or $900,000.00 more than the bid at the June 3, 2005 sale. A closing on that sale took place on September 19, 2005.

39. Even acknowledging the additional fee to the Referee for the supplemental sale, the costs of re-publishing the sale, and any additional tax and electricity bills paid by NBAC for the extra 11 weeks, the latter sale should have produced approximately $400,000.00 to $500,000.00 in excess of the proceeds the June 3, 2005 sale would have generated, had it closed. (A large amount of the extra $900,000.00 would have been consumed by additional interest on the Judgment, totaling approximately $346,862.67).

40. It is submitted that NBAC's recovery on its foreclosure judgment, from the August 19, 2005 sale, exceeded the recovery it would have received if the June 3, 2005 sale had been able to close.

41. It is submitted that Mr. Lee is not responsible for the failure to close the June 3, 2005 sale. He contributed 65% of the $2 million deposit tendered to the Referee at the

sale, and provided $500,000.00 to NBAC on July 11, 2005, all in an honest attempt to purchase the Premises.

42. Mr. Lee was not aware that Mr. Mun was without immediate funds to provide his contribution of $500,000.00 on or before July 11, 2005, nor that NBAC would declare the June 30, 2005 Stipulation and Order in breach.

43. Regardless of the blame for the failure, it is submitted that no party suffered any financial loss due to the failure of the June 3, 2005 sale to close.

44. It is submitted that, pursuant to established principles of foreclosure law in New York State, those who tendered the $2 million deposit to the Referee on June 3, 2005 are entitled to a return of their money, less the costs incurred by NBAC in the re-sale of the Premises.

### AS AND FOR A CAUSE OF ACTION AGAINST
### S.K. NEW YORK, LLC AND/OR ZENITH T. TAYLOR, ESQ.

45. Upon information and belief, NBAC has applied the $2 million deposit from the June 3, 2005 sale to the Judgment, thereby reducing their mortgage balance.

46. Upon information and belief, because of the $2 million reduction in the balance owing on the Judgment of Foreclosure and Sale, the closing on September 19, 2005 produced a "surplus" of approximately $1.76 million.

47. Although it has been promised, Mr. Lee has not yet been provided with a copy of the Referee's Report of Sale, so that he cannot presently accept or dispute the method by which the "surplus" was calculated. (RPAPL § 1355 permits the Referee a period of 30 days to file the Report of Sale with the Clerk of the Court, so the Report of Sale may not yet be finalized.) Mr. Lee reserves his right to object to the Report of Sale under RPAPL § 1355, if necessary.

48. Upon information and belief, if the June 3, 2005 sale of the Premises for $19.2 million had actually closed, NBAC would have incurred a <u>deficiency</u> of approximately $750,000.00 on its Judgment.

49. The true effect of the completion of the August 19, 2005 sale was not the production of a true surplus, but actually to reduce a deficiency on the Judgment to approximately $250,000.00.

50. The aforesaid $1.76 million is not "surplus monies" in the sense that the term is used in RPAPL § 1361. Those monies did not create a fund replacing the equity which exceeded the foreclosing mortgagee's judgment, and available for distribution to those with inferior liens on the mortgaged property.

51. It is submitted that the aforesaid $1.76 million was purely the result of the $2 million deposit, to which Mr. Lee contributed $1.3 million.

52. Mr. Lee acknowledges that the other four contributors of the June 3, 2005 $2 million could and may similarly seek and prove entitlement to a full refund of their share of the deposit, and that NBAC would normally be required to refund the additional funds required to supply the entire $2 million refund.

53. Upon information and belief, Mr. Mun would be personally liable for any deficiency left from the foreclosure of the Premises. NBAC would therefore equitably be entitled to retain enough of his $500,000.00 share of the $2 million deposit, to make themselves whole.

54. Mr. Lee has not yet been able to determine whether the aforesaid $1.76 million is still in the hands of the Referee or whether it has been deposited with the Queens County Clerk, as set forth in the Judgment, or the Clerk of Bankruptcy Court as part of the Debtor's bankruptcy estate, now that the foreclosure action has been transferred to the Bankruptcy Court. It is for that reason that action is brought against both the Debtor and the foreclosure Referee.

55. For the above reasons, Mr. Lee is entitled to receive a full refund of his $1.3 million from the aforesaid $1.76 million "surplus", whether the money is currently in the hands of the Referee or deposited elsewhere. (The balance of the surplus would, upon application, be available to first refund Mssrs. Chang, An, and Kameo, with the remainder to be refunded to Mr. Mun).

WHEREFORE, Mr. James H. Lee prays for an Order of this Court granting him a Judgment in the sum of $1.3 million against the defendants, <u>only</u> to the extent of or against such of the defendants in possession of some or all of the "surplus" created by the closing of the foreclosure sale of 150-24 Northern Boulevard, Flushing, New York on September 19, 2005, for the costs and disbursements of this proceeding, and for such other and further relief as the Court deems just and proper.

Dated: October 26, 2005

        HODGSON RUSS LLP

        BY:  /s/ Peter A. Muth
           Peter A. Muth (PM - 9103)
           *Attorneys for Plaintiff, James H. Lee*
           152 West 57th Street, 35th Floor
           New York, New York 10019
             and
           One M&T Plaza, Suite 2000
           Buffalo, New York  14203
           NYC Telephone: (212) 751-4300
           NYC Facsimile: (212) 751-0928
           Buffalo Telephone (716) 856-4000 ex 1233
           Buffalo Facsimile (716) 849-0349